47 CCPA

**BELLBROOK DAIRIES, INC. (Edlo, Inc., assignee, substituted)**

v.

**BOWMAN DAIRY COMPANY.**

Patent Appeal No. 6458.

United States Court of Customs
and Patent Appeals.
Jan. 6, 1960.

Charles R. Allen, Jr., Washington, D.
C. (William G. MacKay, San Francisco,
Cal., of counsel), for appellant.

Horace Dawson, Chicago, Ill., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and JOHNSON (retired), Judges.

MARTIN, Judge.

This appeal is from a decision of the Commissioner of Patents, acting through the Assistant Commissioner, reversing the decision of the Examiner of Interferences granting the petition for cancellation from the Supplemental Register of "Sta-Slim" for skim fluid milk,[1] the petition being filed by Bellbrook Dairies, Inc. (Edlo, Inc., assignee, substituted), appellant here.

Appellant seeks cancellation pursuant to Section 24 of the Lanham Act, 15 U.S.C.A. § 1092, and predicates his right to secure cancellation upon his prior use[2] of "Slim" for vitamin enriched fluid non-fat milk.

The uncontroverted evidence shows that as early as July 14 or 15, 1949, the word "Slim" was affixed by appellant to cartons containing a vitamin enriched non-fat fluid milk. At least until the institution of the proceedings in which this appeal was taken, appellant has continued to use "Slim" in conjunction with the sale of the same milk product.

At first operations were confined to the San Francisco area, the original place of business of Bellbrook. Within six months, "Slim" and the product it represented began to receive substantial publicity in newspapers and trade journals resulting in numerous inquiries from all over the United States as well as several foreign countries. Shortly thereafter, Bellbrook began to engage in an advertising and promotional campaign designed to inaugurate a franchising program for "Slim," which resulted in Bellbrook accumulating a large number of licensees throughout the United States who are packaging and selling "Slim."

Appellant has spent large sums on advertising and in the preparation of booklets, bottle hangers, and other promotional aids for the use of dairies subscribing to its program. Part of the royalties which Bellbrook receives is used for advertising in the areas wherein the licensees sell.

Bellbrook, via license agreements which are now standard for all licensees, requires its franchise holders to submit samples of the product which the licensees themselves produce in accordance with specifications given them as part of the franchise agreement, once each month. Upon receiving these samples, Bellbrook has them analyzed by a dairy products laboratory to see if they conform to the formula. If the products vary from the specifications, the producers are warned, and according to the testimony of appellant's vice-president, compliance has always followed any such warning. Only very occasionally, but not on a systematic basis, "spot" checks are made of the licensees' production of "Slim."

The first use alleged by appellee for "Sta-Slim" is February 8, 1951. Appellee sells in the "Metropolitan Chicago" area and has sold almost 17 million quarts under this mark since 1951. Substantial sums have been spent in advertising.

Appellant's only witness, its vice president, knew of no instance of actual confusion, and there is no evidence which would tend to show such confusion. Neither is there evidence that the sales areas of the parties, including any licensees, actually overlap.

The Assistant Commissioner, relying in part upon her decision in Bellbrook Dairies, Inc. v. Hawthorn-Mellody Farms Dairy, Inc., 110 USPQ 372, reversed 253 F.2d 431, 45 CCPA 842[3] (herein-

1. Registration No. 571,832, registered March 10, 1953.

2. The record and briefs show, and appellee does not dispute, that appellant was clearly the prior user.

3. That case was an opposition brought by the present appellant, said opposition to the registration on the Principal Register of "Vita-Slim" for fluid milk being predicated upon opposer's allegation of confusing similarity with its own "Slim," the same product involved in the instant

after referred to as the "Vita-Slim" case) found that the circumstances surrounding the use of "Slim" by Bellbrook and its franchisees "has probably led the purchasing public to think of 'Slim' as a skim milk product put on the market by a dairy in their area, rather than as a trademark identifying the skim milk of * * * [appellant] and distinguishing it from the skim milk of others." She found nothing in the record to suggest that appellant exercises "control over *the nature and quality of the product* sold by" the licensees. Because "Slim" is "highly suggestive" and because of the manner of its use, the Assistant Commissioner felt that the record contained nothing to support the finding requisite to securing cancellation under section 24.

It is the avowed position of appellant, speaking through its vice-president, that any use of "Slim" as part of the name of a dairy product infringes its rights. Whenever such a use is discovered, its practice is to so inform that user. Although admitting that "Slim" may be highly suggestive, appellant nevertheless contends that it has trademark rights in it, and that "Sta-Slim" is not entitled to registration because it is confusingly similar to "Slim." Bellbrook also alleges that this court's decision in the "Vita-Slim" case is controlling, the factual situation therein purportedly exactly paralleling that of the case at bar.

Appellee's position is that the last mentioned decision is not controlling for several reasons, those being that it involved an opposition and not a cancellation proceeding, that there is new evidence, especially third-party registrations, that "Sta-Slim" is a descriptive slogan, and that the marks are different. Appellee also asserts "Slim" to be merely descriptive, i. e., it is no more than saying "non-fattening." Finally, appellee contends that the fourteen-month wait from the time of issuance of the regis-

tration until the time the petition to cancel was filed was unconscionably long.

We do not agree with appellee's contention that the decision of this court in the "Vita-Slim" case is not controlling here. Appellee's attempt to distinguish the case is not persuasive as will become apparent from the discussion which follows.

■ First, there is no question that the mere failure of appellant to register "Slim" in the United States Patent Office does not militate against its right to petition for cancellation of "Sta-Slim." 15 U.S.C. § 1092, 15 U.S.C.A. § 1092. It should be remembered in this connection that "Slim" was unregistered and yet its user prevailed in the "Vita-Slim" case. It should also be noted that the right of appellant to prosecute this action does not depend upon the exclusive ownership of a trademark. California Piece Dye Works v. California Hand Prints, Inc., 159 F.2d 871, 34 CCPA 907.

Also, this court has held that a licensor of an unregistered mark may successfully maintain opposition proceedings. In Wilson v. Delaunay, 245 F.2d 877, 879, 44 CCPA 1019, this court said:

"It is to be noted moreover that, although the exact terms of the agreements between appellee and his licensees are not shown by the record, it is clear that such licensees accounted to appellee and paid him royalties for the use of the mark 'Zombies.' Evidently, therefore, appellee was regarded as the owner of the mark whether or not he controlled the exact manner in which it was used or the composition of the products to which it was applied."

Second, the mere fact that this is a cancellation proceeding, whereas the "Vita-Slim" case involved an opposition, is not significant. Appellant had no opportunity to oppose the registration of

---

appeal. This court, in reversing the Assistant Commissioner, found "Vita" to be descriptive and that "Slim" formed the dominant part of "Vita-Slim." It was

held that concurrent use of "Slim" and "Vita-Slim" on identical goods would be likely to result in confusion in trade.

"Sta-Slim" on the Supplemental Register but under the Lanham Act was limited to attacking it by a petition to cancel. We find nothing in the statute which indicates that it contemplates a more stringent procedure under these circumstances than when an opposition to registration on the Principal Register is instituted.

Next, appellee contends that the evidence introduced in this case and not found in the previous one distinguishes them. It refers especially to evidence of third-party registrations. The only one using "Slim" which applies to milk is "Vita-Slim" which was held unregisterable in the "Vita-Slim" case. Since the other third-party registrations are applied to different products than those involved in the case at bar they are of no material significance.

■ Further, appellee asserts that the length of time which transpired between the registration and the filing of this action provides the distinguishing factor. We do not believe that the lapsed time was unreasonable, and appellee cites no cases to substantiate its contention.

Coming now to the marks themselves, it would serve no purpose to analyze again appellant's mark "Slim" for this court has already done so in the "Vita-Slim" case in stating:

"While the word 'Slim' is suggestive of the intended effect of skim milk on the purchaser, as indicated by the fact that both parties have used it in association with the notation 'non-fattening,' it would not be thought of as relating to the physical properties of the milk itself, and hence is not *descriptive* in the same sense as 'Vita.'" (Italics ours.) [253 F.2d 433.]

There is other evidence in this case which fortifies appellant's contention that its product, skim milk which has been enriched with non-fat milk solids and vitamins A and D, is known by the trademark "Slim" and as the product of Bellbrook. That trademark has been used by appellant to identify its product in the San Francisco area since 1949 and by its numerous licensees in many states for some time. Further, appellant has registered "Slim" for this product in twenty-seven states. It exerts control over its licensees by contracts having various restrictive provisions including the requirement that each franchise holder submit samples of his product to it monthly for analysis.

■ As a prerequisite to the prosecution of this action, section 24 requires that the petitioner believes "that he is or will be damaged by the registration of a mark on this register * * *." This matter was considered by this court in the "Vita-Slim" case and we agree with its holding in this connection wherein it was said, "Likelihood of confusion affords sufficient evidence of probable damage, even though the opposer may not have used its mark as a technical trade-mark. George H. Ruth Candy Co. v. Curtiss Candy Co., 49 F.2d 1033, 18 CCPA 1471; Virginia Dare Extract Co., Inc. v. Dare, 70 F.2d 118, 21 CCPA 1086, and cases there cited."

■ It appears that several of appellant's licensees operate in the vicinity of the place of business of appellee. There being no regional limitation upon the registration of appellee, it could expand its operations to cover many of the areas now being exploited by the licensees including appellant's own area of operation. Hence, if the marks are confusingly similar, it is probable that appellant would be damaged by the registration of "Sta-Slim."

■ Therefore, the next question which we must resolve is whether "Slim" and "Sta-Slim" are so similar as to be likely to create confusion. As has been stated, this court in the "Vita-Slim" case found "Slim" and "Vita-Slim" to be so. It based its opinion on its finding that "'Slim' forms the dominant part of appellee's mark 'Vita-Slim,' and the concurrent use of those two marks on identical goods would be likely to lead to confusion in trade." Since here the

goods are substantially identical and "Slim" is the dominant part of "Sta-Slim," we arrive at the same conclusion, that is, the marks here would be likely to create confusion in the trade. Merely because "Vita" was held to be more or less descriptive of the product because it contained vitamins, and here "Sta" in conjunction with "Slim" is suggestive of the result the registrant hopes to lead others to believe will be obtained by using the product, we see nothing in such a distinction which would make us alter our conclusion.

For the above reasons we are of the opinion that the petition for cancellation should have been sustained, and, accordingly, the decision of the Assistant Commissioner is reversed.

Reversed.

JOHNSON, J., did not participate in decision.