47 CCPA
**MURRAY CORPORATION OF AMER-ICA, Appellant,**

v.

**RED SPOT PAINT AND VARNISH CO., Inc., Appellee.**

Patent Appeal No. 6574.

United States Court of Customs and Patent Appeals.

July 6, 1960.

James H. Littlepage, Washington, D. C., Francis P. Keiper, Syracuse, N. Y. (Helen F. Keiper, Syracuse, N. Y., of counsel), for appellant.

Herbert J. Jacobi, Washington, D. C. (Samuel L. Davidson, Washington, D. C., of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

MARTIN, Judge.

■ The Murray Corporation of America, owner of registration No. 602,641, registered March 1, 1955,[1] for "Easy" for use on "Touch-up Enamel supplied in self-spraying containers for application to domestic laundry and other appliances," has opposed the registration of "Easytint" for "White paint particularly constructed to be mixed with various colors as desired." The "Easytint" application was filed on March 22, 1955, and alleges March 12, 1955, to be the date of first use of that mark in commerce. Appellant is unquestionably the first user. The sole question presented for our consideration is whether "Easytint" so resembles "Easy," as to be likely, when applied to appellee's goods, to cause confusion or mistake or to deceive purchasers (Lanham Act, Section 2(d), 15 U.S.C.A. § 1052(d)).

Appellant's touch-up enamel is designed specifically to be used in repairing blemishes in the enamel finishes of domestic appliances of its manufacture. At the time testimony was taken it was produced only in white, although it was argued by appellant that it will also be made in colors for colored appliances which are becoming more popular. Appellant's enamel is sold principally to dealers handling its household appliances. However, there is evidence that these dealers may be hardware companies where other items besides "Easy" appliances, such as paints, are sold.

The "Easytint" mark is used in connection with quart and gallon containers of white and gray base paints of several different textures adapted to have colorants added to them whereby hundreds of different colors of the various textures may be produced at the retail outlet from a limited stock of the bases. "Easytint" is sold through paint stores, lumberyards, department stores, furniture stores, hardware stores and general stores to the general consuming public. Although appellee manufactures and sells a large variety of paint products, including some in aerosol containers, "Easytint" is not now marketed in aerosol cans.

A number of third party registrations for paints, lacquers and enamels are of record[2] in this case. Also in evidence is the "1953 Trade-Mark Directory,"[3] and a portion of its 1955 supplement issued by the Trade-Mark Bureau of the National Paint, Varnish and Lacquer Association, Inc. The Directory states "The Trade-Mark Bureau has on file all trade-marks listed with it by manufacturers in the paint industry as well as all marks pertaining to the industry that are registered in the United States Patent Office."

No reference to the third party marks was made by the Assistant Commissioner in her decision. It was her opinion that

* United States Senior Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'CONNELL,* pursuant to provisions of Section 294(d), Title 28 United States Code.

1. Filed August 31, 1953, alleging first use to be July 20, 1953.

2. They are: "Celanese," Reg. No. 240,109; "Easycoat," Reg. No. 262,659; "Eze-Ply," Reg. No. 317,085; "Easy Way," Reg. No. 325,642; "Kleen-Ezy," Reg. Nos. 335,304, 341,861; "E-Z Wipe," Reg. No. 360,824; "Strikeasy," Reg. No. 433,023; "Eaz-on," Reg. No. 576,586; "Eezel," Reg. No. 596,630; "So-E-Zy," Reg. No. 613,789.

3. Included in that Directory for paints, varnishes, lacquers and similar products are the following marks: Easy, Easycoat, Easyflo, Easy Flow, Easy-Flow, Easy-Kote, Easylac, "Easy-on-Enamel," Easy Rub, Easy Shine, Easy Way, Eaz-On, E-Z, E-Z Brush, E-Z-C, E-Z-Cleen, E-Z-Cover, E-Z-Do, E-Z-Duz-It, Eze-Cote, Ezee Coat, Ezee-Kote, Ezeflow, Ezekep, Eze Lustre, Ez-enamel, Eze-Ply, Ezetone, E-Z Flo, E-Z-Flo, E-Z Flow, E. Z. Free-Flowing, E-Z-Lac, E-Z-Lux, Ezon, E-Zon, E-Z-Wipe, Ezyflo, Ezy Flow, Ezy-On, Ezy-Rub, Ezy-Tone, Ezy-T-Use, Ezy Work.

"Considering the nature of and differences in the marks, the differences in goods, the differences in trade channels, and the differences in average purchasers, it is concluded that there is no likelihood of confusion. There is no opportunity for confusion of purchasers under the circumstances of this case."

Appellant points out that the parties' goods are of the same general class, paints, and argues that there is a substantial overlapping in the trade channels wherein those products are sold. Appellant further contends that purchasers are likely to think that "Easytint" paints are tinted products of its manufacture and that the addition of the descriptive word "tint" is insufficient to avoid likelihood of confusion. As to the third party registrations, appellant contends that they do not have the same connotation that "Easytint" does and that in any event there is no need to compound confusion by adding to the Principal Register another confusingly similar mark. With respect to the Trade-Mark Directory marks, appellant states that there is no indication that they have even been used as much as once.

Appellee argues that the goods of the parties are for specifically different purposes and that the trade channels in which they are sold are different, appellee's products being sold through various retail outlets while appellant's products, specifically designed to be used in repairing its own appliances, are sold principally through its appliance dealers. Even if the products were sold to the same stores, appellee continues, they would be sold in different departments or sections thereof since one is specifically a repair product. Appellee states that its mark is highly suggestive and that the sole similarity between it and "Easy" is in the word "easy" which is not arbitrary in the paint industry and consequently not entitled to extensive protection. The connotations of the two marks are said to be specifically different.

Appellant does not contend and we do not find that it has proven use of its "Easy" mark on paints other than those for which the mark was registered, i. e., "Touch-up Enamel supplied in self-spraying containers for application to domestic laundry and other appliances." Although one of appellant's witnesses stated that a very small quantity of "Easy" enamel was sold in bulk, its "Buyer of Finished Parts" who has been in the purchasing department for over thirty years testified that he knew of no purchases of "Easy" touch-up enamel in other than spray or aerosol cans. This contradictory evidence is insufficient to show any extension in the use of the mark for touch-up enamels. Neither is there evidence which shows that appellant manufactures or sells any paint products other than its "Easy" touch-up enamel.

"Easy" and "Easytint" are broadly both paints. With respect to the manner in which the goods are sold, "Easy" enamel is most likely to be found with "Easy" appliances, for it is those with which it is designed to be used. "Easytint" would be found in the paint or hardware sections of stores. Therefore, even though the products of the parties might be sold in the same store, they would probably be sold in different sections thereof. However, since it is possible that purchasers of "Easy" may well be the same as those who purchase "Easytint," it is necessary to consider whether likelihood of confusion or mistake within the meaning of Section 2(d) exists.

Before we consider the third party registrations and their effect upon this controversy, we shall turn to the "easy" marks in the "1953 Trade-Mark Directory." That Directory is dated August 1, 1953. While there is no evidence that the marks listed were ever used, they constitute an indication that the word "easy" and its phonetic equivalents have "a suggestive significance as applied to [paints] and hence would be taken primarily as describing or suggesting some

quality of the [paints] rather than as pointing to their origin." Shoe Corp. of America v. Juvenile Shoe Corp. of America, 266 F.2d 793, 797, 46 CCPA 868. Likewise, the third party registrations which incorporate the word "easy" and its audio equivalents would have this same significance. As we stated in the Shoe Corp. case,

> " * * * In determining whether a word or syllable has a descriptive or suggestive significance as applied to merchandise it is proper to take notice of the extent to which it has been used in trademarks by others on such merchandise. If it has been frequently so used, the inference is warranted that it is not purely arbitrary; that it would be likely to be understood by purchasers as identifying or describing the merchandise itself, rather than the source thereof, and hence as having little or no trademark significance."

▮ Therefore, "Easy" being suggestive, we are of the opinion, on the record before us, that appellant is not entitled to preempt the use of this word generally and certainly not in this case just because appellee has joined "Easy" with a word that connotes color and is descriptive of its goods. Furthermore, although appellee's mark embodies appellant's entire mark,[4] when considering those marks in their entireties, as we must, in the light of the factors we have discussed, we are of the opinion that the likelihood of confusion, mistake or deception contemplated by Section 2(d) of the Lanham Act does not exist.

Affirmed.

RICH, J., sat but did not participate in the decision of this case.

---

4. The cases which prohibit the registration of a mark which incorporates the entire trademark of another involve trademarks which when considered in their entireties would cause confusion. See Bellbrook Dairies, Inc. (Edlo, Inc., assignee, substituted) v. Bowman Dairy Company, 273 F.2d 620, 47 CCPA 763; Bellbrook Dairies, Inc. (Edlo, Inc., assignee substituted) v. Hawthorn-Mellody Farms Dairy, Inc., 253 F.2d 431, 45 CCPA 842; Vi-Jon Laboratories, Inc. v. Lentheric, Incorporated, 133 F.2d 947, 30 CCPA 916.