55 CCPA

**KRIM–KO CORPORATION (KRIM–KO DIVISION, the NATIONAL SUGAR REFINING COMPANY), Appellant,**

v.

**The COCA–COLA BOTTLING COMPANY OF NEW YORK, Inc., Appellee.**

**Patent Appeal No. 7897.**

United States Court of Customs and Patent Appeals.

Feb. 15, 1968.

John Rex Allen, Chicago, Ill., for appellant.

Julius R. Lunsford, Jr., Atlanta, Ga., Francis Browne, Washington, D. C., for appellee.

Before RICH, Acting Chief Judge, SMITH and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

---

\* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 112,847 for "A Fruit Juice Concentrate Preparation for Use in Making a Food Drink." Use is alleged since January 19, 1961. See section 13 of the Trademark Act of 1946, 15 U.S.C. § 1063.

SMITH, Judge.

This proceeding involves appeals from the decision of the Trademark Trial and Appeal Board in Opposition No. 41,711, sustaining appellee's opposition to appellant's application to register "BEEP,"[1] and in Cancellation No. 8,172 granting the appellee's petition to cancel appellant's registered composite mark "BEEP FOR BREAKFAST,"[2] 148 USPQ 396 (1965).

Appellant, the applicant-respondent (hereinafter Krim-Ko) was originally Krim-Ko Corporation, an Illinois corporation, which later merged with and became a division of The National Sugar Refining Company, a New Jersey corporation. The original opposer-petitioner (hereinafter Coca-Cola) was The Coca-Cola Bottling Company of New York, Inc., a Delaware corporation, whose trademark "VEEP" for "Carbonated Flavored Beverages Sold as Soft Drinks and For Use as Mixers" was registered October 21, 1958 under Registration No. 668,753. The Coca-Cola Company, a Delaware corporation of Atlanta, Georgia, appears to have acquired the rights in said mark and is here as the appellee in both the above proceedings.

*The Opposition Proceeding*

The opposition involves the Coca-Cola trademark "VEEP" and the Krim-Ko trademark "BEEP." The Trademark Trial and Appeal Board found, and the record establishes, that "VEEP" is sold like other soft drinks or mixers in bottles and cans through food stores, vending machines, refreshment stands, bars, restaurants and home distributors of beverage products. The original owner of the mark advertised and sold the product extensively in the area of New York City and in the Buffalo-Niagara Falls area.

Krim-Ko's product "BEEP" is described variously as a fruit juice drink

2. Registration No. 757,862, issued October 1, 1963 for "A Food Drink Made from a Variety of Fruit Juices." Use is asserted since May 15, 1961. See section 14 of the Trademark Act of 1946, 15 U.S.C. § 1064.

base or a breakfast juice concentrate or breakfast fruit cocktail drink base. This base or concentrate is sold under a franchise license agreement to processing dairies which mix it with water, sugar and ascorbic acid to make the end consumer drink "BEEP." Krim-Ko argues that since the base or concentrate is not a soft drink and must be kept refrigerated, the only direct purchasers of the base or concentrate are processing dairies who are equipped to refrigerate the base or concentrate and to process it to make the drink (which requires refrigeration) for sale to the end consumer. From these facts Krim-Ko further argues that its product is not suitable for sale to other purchasers.

### The Cancellation Proceeding[3]

The cancellation proceeding involves Coca-Cola's "VEEP" trademark and Krim-Ko's registered composite mark "BEEP FOR BREAKFAST." The composite mark is:

It is used in selling and advertising the drink compounded from the "BEEP" concentrate. The product is advertised as a fruit juice drink and is sold as a breakfast food drink. Krim-Ko stresses that "BEEP FOR BREAKFAST," like the "BEEP" concentrate, mut be kept refrigerated at all times and can be sold only by dairies on their home delivery routes or for resale in the refrigerated compartments of supermarkets and the like. The record establishes that about 75% of the product is sold on home delivery routes and the remainder through supermarkets and the like.

### Both Proceedings

It is clear that use of "VEEP" by Coca-Cola antedates Krim-Ko's use of both "BEEP" and "BEEP FOR BREAKFAST." It appears that all three trademarks have been used concurrently and extensively since early in 1961 and have been extensively advertised and, in part, sold in the same territory. Krim-Ko's cost of advertising "BEEP FOR BREAKFAST" has been over $300,000 and sales during the first three and one-half years exceeded thirty-four million quarts. The testimony adduced by both parties failed to show any instances of actual confusion. While the absence of evidence of actual confusion is not determinative of an issue of likelihood of confusion, it is a factor which may be accorded some weight. American Drill Bushing Co. v. Rockwell Mfg. Co., 342 F.2d 1019, 52 CCPA 1173, 1177 (1965); Coral Chemical Co. v. H. D. T. Company Factors, Inc., 332 F.2d 841, 51 CCPA 1413 (1964).

### Opinion

The record establishes that there are specific differences in the marks in issue,

3. The attorneys for the parties had stipulated to hold up the opposition proceeding against "BEEP" until the "BEEP FOR BREAKFAST" trademark was published so that it then would be opposed by Coca-Cola. The publication of "BEEP FOR BREAKFAST" was not noted by either counsel because they were both out of their respective offices during almost the entire summer of 1964 and the "BEEP FOR BREAKFAST" registration issued. A cancellation proceeding was then instituted and the two proceedings were consolidated for record and briefing purposes. Under these circumstances, the cancellation proceeding is here treated as if it were, in fact, an opposition proceeding and no additional weight has been given to the fact that the registration has issued.

the goods with which the marks are used, and in the manner of merchandising the goods sold under the marks. We have considered these differences in the light of the record and the arguments advanced by both parties. As to the respective goods, "VEEP" and "BEEP FOR BREAKFAST" are both applied to beverages for human consumption which, in part, would be sold in grocery stores and the like. "BEEP" concentrate, however, is sold only to dairies for processing. Coca-Cola's "VEEP" is unrestricted as to trade channels except as above noted. The end products of both parties are sold through some of the same trade channels and have, at times, been advertised in the same general manner to the same prospective purchasers.

The observation we made in Hollywood Water Heater Co. v. Hollymatic Corp., 274 F.2d 679, 47 CCPA 782 (1960), is also relevant here. There we stated, id. at 784, 274 F.2d at 680:

> Appellant, in asserting that the automatic gas-fired water heaters on which it uses the mark are so different from the goods on which appellee uses the mark that no mistake, confusion or deception is likely, ignores the changes made by the Trademark Act of 1946 and is founded upon the mistaken assumption that appellee is entitled to protection of its mark only with respect to specific goods, i. e., electrically operated hamburger patty molding machines. We reject appellant's position. Section 2(d) of the Trademark Act of 1946 and the unquestioned weight of modern authority in this field does not require a finding of confusing similarity of goods as the basis for sustaining a trademark opposition but instead requires us to determine whether it is "likely" that the mark when applied to the goods of the applicant will cause confusion or mistake or deceive purchasers.

While specific differences in goods (orange concentrate used in the preparation of uncarbonated orange drink v. carbonated soft drinks) and their channels of distribution were noted by the Trademark Trial and Appeal Board and this court in Seven-Up Co. v. Tropicana Products, Inc., 142 USPQ 384 (TTAB 1964), affirmed, 356 F.2d 567, 53 CCPA 1209 (1966), and the differences in the marks "SUN-UP" and "SEVEN-UP" were considered, no likelihood of confusion was found. As stated in our opinion, id. at 1211, 356 F.2d at 568:

> * * * Where the words have well known and understood, widely differing meanings, a small difference in spelling or appearance may be sufficient to distinguish them and avoid a finding of confusing similarity. On the other hand, with coined words which are meaningless so far as the English language is concerned, slight variations in spelling or arrangement of letters are often insufficient to direct the buyer's attention to the distinction between marks.

Here, as distinguished from the *Seven-Up* decision, we have the words "VEEP" and "BEEP," both of which have definite dictionary meanings assigned to them. Thus, our analysis of the issues must start with a comparison of the words themselves. Considering the linguistic aspects of the words, the word "BEEP" is an onomatopoeic word which as spoken is a vocal imitation of the sound associated with it. "Veep" is not. It is the phonetic equivalent of the abbreviation "V. P." which has gained popular acceptance as indicating a Vice-President. As a coined word, it fills a specialized semantic need so well that it has become a part of our growing language. When so compared, the substance and meaning of the words make it seem quite unlikely that they would create any confusion as to meaning in the mind of a purchaser. Despite specific differences in spelling and in probable meaning, the dominant factor for consideration is the likelihood of confusion arising from the similarity in sound of the two words when spoken. The consonants "V" and "B" provide the initial aural impact on the listener and initiate the psychological processes leading to recall and assignment of a

meaning to the words. The consonant sounds "B" and "V" are likely to be misunderstood by the listener, depending as they do on such variables as the diction of the speaker and the hearing acuity of the listener. Thus there may well be a doubt as to whether the entire words when spoken are likely to confuse a listener-purchaser. Unless both the one speaking and the one hearing the two words are particularly careful, the sound similarities of "V" and "B" may lead to a confusion in the recall process, so as to negate the effect of the differences in meaning of the words.

While appellant argues that "Veep" and "Beep" are well known dictionary terms and cites several cases allegedly in support of the theory that where words have *well known and understood, widely different meanings,* a small difference or spelling *may* be sufficient to distinguish them, the fact is the words "Beep" and "Veep" are entirely arbitrary marks in reference to the goods involved, without any significance or suggestive connotation. There is virtually no distinction in sound or visual impression between the words. It is sufficient if the similarity in either form, spelling or sound alone is likely to cause confusion. Purex Corp. Ltd. v. Maryland Paper Products Co., 287 F.2d 186, 48 CCPA 848 (1961).

The likelihood of confusion of the marks "VEEP" and "BEEP" has been found to reside in the similarity of the consonant sounds of "V" and "B" which control the meaning assigned to the words as entireties. The Trademark Trial and Appeal Board properly observed:

* * * sound is of particular importance when we are dealing with products like soft drinks which may frequently be purchased by the spoken word.

While this resolution of the issue is not entirely free from doubt, we think such doubt as there is should be resolved in favor of the first user, see, e. g., Castle & Cooke, Inc. v. Joseph E. Seagram & Sons, Inc., 346 F.2d 621, 52 CCPA 1425 (1965); Coral Chemical Co. v. H. D. T. Company Factors, Inc., supra; Polymer Corp. v. Dayco Corp., 324 F.2d 1019, 51 CCPA 794 (1963). Thus, we affirm the decision of the Trademark Trial and Appeal Board in the opposition proceeding.

We pass now to the cancellation proceeding and the question of confusion between the mark "VEEP" and the composite registered mark. As we noted above, we found the probable aural similarities of the mark "VEEP" and "BEEP" to be such that confusion would be likely. However, in the composite mark, we are dealing with other factors than the aural impact of the two words. Instead, we must compare the word "Veep" with the total composite mark in which both the impact of visual perception and the alliteration of the spoken portion of the mark must be considered. Thus, in the composite mark, the representation of a bird directly above the word "Beep" immediately creates in the mind of the viewer an association between the word "Beep" and the bird there shown.[4] This association of a bird image with the entire mark is further reenforced by the alliterative slogan "BEEP FOR BREAKFAST" which suggests the common association of the morning song of birds with the time for breakfast.

In this analysis we are mindful of the argument advanced by appellee that "BEEP" as used in the composite mark may be considered a verb by some who hear or see the mark in its entirety. To the extent this be true, one cannot "BEEP" for breakfast without creating a distinct "Beep." When so read, the entire slogan would not be likely to be associated with the word "Veep." Just how one might "Veep" for his breakfast

---

4. This possibility is increased for a substantial number of persons who are potential customers for the products of the parties by the "Beep-Beep" sound of the "Road-Runner" in animated cartoons popular since the early 1940's and now frequently shown on television.

has not been demonstrated on this record. Considering all the factors, the substitution of "VEEP" for "BEEP" in the composite mark does not seem likely.

The conclusion of the Trademark Trial and Appeal Board that confusion of the marks involved in the cancellation proceeding would be likely can be justified only by a dissection of the composite mark, segregating the word "Beep" therein, and then comparing it with the word "Veep." It seems clear to us that such dissection is an improper basis for decision of this issue.

A review of the record establishes that applicant's franchise dairies use the term "BEEP FOR BREAKFAST." The fact is that the trademark which applicant has registered for the breakfast drink made and sold by such dairies is the composite mark which includes the words "BEEP FOR BREAKFAST," not "BEEP," and it is this mark *as a whole* which is involved in the cancellation proceeding.

The appellee argues that in most instances Krim-Ko's franchised dairies labelled the product "BEEP FOR BREAKFAST" with the word "BEEP" in somewhat larger letters than the words "FOR BREAKFAST" (as shown in the preceding reproduction of the mark). The words "FOR BREAKFAST" as there shown also are printed in large type. In most instances where the trademark was printed in smaller type, the entire mark "BEEP FOR BREAKFAST" was so reproduced. In one instance, however, a dairy did not use the words "FOR BREAKFAST" after "BEEP." In another instance a dairy put the word "Trademark" below the word BEEP and in a third instance the ® trademark symbol followed the word BEEP. In all other instances so far as the record shows the trademark was displayed in accordance with Krim-Ko's instructions which required use of the entire composite mark. We do not regard these few aberrations as determinative of the issue in the cancellation proceeding. Resolution of this issue does not permit dissection of the registered mark, nor should we resolve it on the basis of the few scattered instances of record in which some of the franchised dairies may have improperly displayed the mark.

In B. Kuppenheimer & Co. v. Kayser-Roth Corp., 326 F.2d 820, 51 CCPA 902 (1964), this court reversed the decision of the Trademark Trial and Appeal Board holding two marks to be confusingly similar. The decision had been predicated upon an advertisement showing that only part of the trademark, i. e., "SUP-PANTS," was used whereas the applicant had sought to register "KUPPENHEIMER SUP-PANTS" written in an unusual manner. A majority of this court held this to be error, saying:

> We cannot predicate our decision upon the wording of this advertisement. Our decision can properly be based only upon what the application shows as the trademark for which applicant wishes registration. If abuses develop in connection with the use of this mark, remedies are available to the abused. * * *

See also Schwarzkopf v. John H. Breck, Inc., 340 F.2d 978, 52 CCPA 957 (1965).

Coca-Cola's position on the cancellation proceeding, like the decision of the Trademark Trial and Appeal Board, is based on a dissection of the registered mark. We have disapproved of such an analysis on many occasions. See In re Blanchard Importing & Distributing Co., 360 F.2d 254, 53 CCPA 1229 (1966); Murray Corp. of America v. Red Spot Paint & Varnish Co., 280 F.2d 158, 47 CCPA 1152 (1960).

We have considered Coca-Cola's argument that "BEEP" is the dominant part of Krim-Ko's composite mark. We do not find that the record establishes the *dominance* of the word "BEEP" over the other elements which comprise the entire mark.

Thus, we conclude the Trademark Trial and Appeal Board was in error in comparing "VEEP" with only the "BEEP" portion of the registered composite mark instead of comparing the entire marks.

The decision of the Trademark Trial and Appeal Board in Opposition No. 41,-711 is affirmed. Its decision in Cancellation No. 8,172 is reversed.

Modified.