**COLGATE–PALMOLIVE COMPANY, Appellant,**

v.

**CARTER–WALLACE, INC., by change of name from Carter Products Inc., Appellee.**

**Patent Appeal No. 8286.**

United States Court of Customs and Patent Appeals.

Nov. 12, 1970.

Nims, Halliday, Whitman, Howes & Collison, New York City, attorneys of record, for appellant; Bert A. Collison, Thomas A. Kain, New York City, of counsel.

von Maltitz, Derenberg, Kunin & Janssen, New York City, for appellee; Louis

Kunin, V. T. Giordano, New York City, of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal[1] from the decision of the Trademark Trial and Appeal Board, abstracted at 155 USPQ 759, dismissing an opposition by Colgate-Palmolive Company, appellant, registrant of the mark "PEAK" for a dentifrice,[2] against an application filed by Carter-Wallace, Inc., appellee, to register "PEAK PERIOD" for personal deodorants, asserting use since February 18, 1965. The issue was framed below solely on the basis of the application and the notice of opposition as neither party took testimony. Inasmuch as appellant's registration was issued prior to the filing date of appellee's application, appellant-opposer was deemed by the board to be the prior user of its mark.

It was appellant's contention below, and in essence here, that appellee's mark PEAK PERIOD includes appellant's mark PEAK in its entirety and that the second word "PERIOD" is "ill suited to differentiate the two marks." The board's response to this contention was that such inclusiveness did not *ipso facto* warrant a holding that the marks are confusingly similar, citing Murray Corporation of America v. Red Spot Paint & Varnish Co., 280 F.2d 158, 47 CCPA 1152, 126 USPQ 390 (1960), and observing in consonance with the holding in the *Murray* case that the decided cases which prohibit the registration of a mark incorporating the entire trademark of another involve marks which when considered in their entireties would cause confusion or mistake or deception.

In concluding that there is no likelihood of confusion or mistake or deception, the board reasoned:

The noun "PEAK" conveys a number of meanings such as the top of a hill or mountain, a projecting brim of a cap, a jut of land, a high point in a course of development (See: Webster's Third International Dictionary, 1965). The term "PEAK PERIOD", a well-known phrase, conveys the meaning of reaching the high point or maximum of an activity during a specified portion of time, a meaning which is substantially different than that elicited by the word "peak" alone. The involved marks thus produce a different reaction and especially so when applied to the specific goods of the parties. Applicant's mark as applied to a personal deodorant would readily suggest that the product is most effective at a critical time. Opposer's mark "PEAK" when applied to a dentifrice does not have any similar suggestiveness. In our opinion the marks create different commercial impressions as applied to the respective goods of the parties.

The sole issue presented below, and here, is whether appellee's mark PEAK PERIOD, as applied to personal deodorants, so resembles appellant's mark PEAK, as applied to a dentifrice, as to be likely to cause confusion, or to cause mistake, or to deceive, within the purview of section 2(d) of the Trademark Act of 1946 (15 U.S.C. § 1052(d)).

Appellant advances and relies heavily on the argument that its mark PEAK is a strong and unique mark and as such is entitled to a broad scope of protection. On the basis of this record, we are unable to agree with this contention. As applied to appellant's goods, we find that the mark has a laudatory or suggestive indication. It is neither a coined nor fanciful nor arbitrary mark. It is simply a common noun or adjectival word

---

1. The appeal was originally argued March 2, 1970. Reargument was heard November 2, 1970.

2. Reg. No. 786,539 issued March 9, 1965.

of everyday usage in the English language. There is nothing of record to indicate the slightest transformation of the word "peak" into a strong or highly distinctive mark by reason of advertisement, volume of sales or market place acceptance and public recognition.

Although the respective goods of the parties may be encompassed by the broad characterization of "toilet preparations," they are nevertheless essentially different and noncompetitive in that their application and utility serve different objectives. The office and function of a dentifrice bears direct relation to the human system bordering on the medicinal, while a deodorant is more related to socially acceptable aspects of human sanitation.

We agree with the board that the mere presence of the word "peak" in the trademark PEAK PERIOD does not by reason of that fact alone create a likelihood of confusion or deception. That determination must arise from a consideration of the respective marks in their entireties. The difference in appearance and sound of the marks in issue is too obvious to render detailed discussion necessary. In their entireties they neither look nor sound alike.

With reference to the difference in meaning of the involved marks when applied to the specific goods of the parties and the different commercial impressions which would logically ensue therefrom, we are not persuaded of error in the rationale applied by the board.

We are familiar with, and have considered, the array of decided cases cited and relied on by the parties. Except as the decided cases enunciate principles of trademark jurisprudence, they provide but meager assistance in the disposition of varied cases as they arise. We think, however, the language employed by this court in Denney v. Elizabeth Arden Sales Corp., 263 F.2d 347, 46 CCPA 790 (1959), bears relevance to the instant appeal. In *Denney*, closely related cosmetics, face powder and vanishing liquid cream, were involved. The court said:

* * * even though both products come within the category of cosmetics, they are applied to the skin for entirely different purposes.

The cumulative differences between the marks and the respective products herein lead to the conclusion that there is no likelihood of confusion of prospective purchasers.

So here, it is our view that when the differences between the respective goods of the parties are considered with the clearly apparent differences between PEAK and PEAK PERIOD, the cumulative impact of those differences militates against a conclusion of likelihood of confusion within the purview of section 2(d) of the Trademark Act of 1946.

We are not persuaded that the board committed reversible error in dismissing the opposition and, accordingly, *affirm* that decision.

Affirmed.

RICH, Judge (dissenting, with whom LANE, Judge, joins):

With respectful deference for the views of the majority, I cannot agree that a reasonable likelihood of confusion does not exist in the concurrent use of PEAK and PEAK PERIOD on the two consumer products here involved—dentifrice and deodorant. These are both low-cost, consumer-purchased, shelf items in the same category of merchandise, sold in the same departments of the same stores for the related uses of personal hygiene, bought by persons of all degrees of intelligence and perspicacity —some of them careless.

Appellant is admittedly the prior user and registrant and the rule is well established in cases of this short that doubt as to likelihood of confusion shall be resolved in favor of the prior user and against the newcomer. This court so stated in Waldes Kohinoor, Inc. v. Associated Spring Corp., 357 F.2d 404, 53 CCPA 1084 (1966). The rule needs no citation of authority as it has been universally applied in all courts for a long time. As stated in Vandenberg, Trademark Law and Procedure (1959), p. 109,

The theory behind this [rule] is that the newcomer's field of selection of a mark is not so limited as to require the adoption of a mark likely to cause confusion.

That there is in fact at least a reasonable doubt about likelihood of confusion in this case can scarcely be gainsaid in view of the equal division which has existed on this court since the first argument which necessitated the reargument.

I cannot agree with the majority's analysis of opposer's mark. PEAK as applied to dentifrice, for which appellant has registered it, has no apparent meaning at all. Certainly it is in no way descriptive and it does not seem to me that it is in any way even suggestive of either the goods or any of the properties of the goods. It is, therefore, an "arbitrary" mark notwithstanding it is a common English word. Marks need not be freshly coined to be arbitrary. Until the public has been taught to associate it with some dentifrice it would not suggest dentifrice. In view of these facts, it is a potentially strong mark and entitled to protection against encroachment. I regard PEAK PERIOD on another personal hygiene, drug store item as an encroachment. It is in the public interest to protect the legitimate interests of merchants by protecting registered marks. If we do not stop here, where will the line be drawn on the registration of other combinations of PEAK with other words for other proprietary cosmetic and toilet articles?

I cannot regard the differences in these goods as a factor likely to prevent confusion. We are not concerned with confusion of the goods but with confusion as to their source. The question is not whether people will confuse the goods, or the marks, but whether the *marks* will confuse *people* or lead them into mistake or deceive them. 15 U.S.C. § 1052(d). The board has held "that the involved goods may be assumed to originate with a single source if sold under the same or similar marks." I consider the marks to be "similar."

Opposer, Colgate-Palmolive Company, alleges in its Notice of Opposition:

1. Opposer is a leading manufacturer, seller, and distributor of *dentifrices, deodorants*, toilet articles and other products. [My emphasis.]

In its Answer, applicant-appellee does not traverse that allegation which we therefore take to be true. If we assume, as we must, sale by opposer of PEAK dentifrice, what would be more likely than that the portion of the purchasing public familiar with such sales, seeing PEAK PERIOD deodorant on the market, would assume that it emanates from the same source?

I harbor no doubt about likelihood of confusion and I would therefore reverse.