THIS DISPOSITION IS
CITABLE AS PRECEDENT OF
THE TTAB

Mailed:  May 23, 2006

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Box Solutions Corp.
_____

Serial No. 76267086
_____

Morton J. Rosenberg of Rosenberg, Klein & Lee for Box
Solutions Corp.

Nicholas K.D. Altree, Trademark Examining Attorney, Law
Office 107 (J. Leslie Bishop, Managing Attorney).
_____

Before Hohein, Walters and Kuhlke, Administrative Trademark
Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

    Box Solutions Corp., applicant, has filed an

application to register the mark BOX SOLUTIONS in stylized

form as shown below,



for "computer hardware, namely, communications servers" in

International Class 9.[1]

_____

[1] Application Serial No. 76267086, filed June 5, 2001, alleging a
bona fide intention to use the mark in commerce under Section
1(b) of the Trademark Act.  The application includes the

Registration has been finally refused under Section 2(d) of the Trademark Act, 15 U.S.C. §1052(d), on the ground that applicant's mark, when used on its identified goods, so resembles the registered mark BOX and design, as shown below,



for "computers and computer peripherals" in International Class 9,[2] as to be likely to cause confusion, mistake or to deceive. The examining attorney also made final his requirement that applicant disclaim the word SOLUTIONS, on the ground that it is merely descriptive of applicant's goods within the meaning of Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1). Consequently, pursuant to Section 6(a) of the Trademark Act, the Trademark Examining Attorney has issued a final refusal of registration. 15 U.S.C. §1056(a).

Applicant has appealed the refusals and briefs have been filed. No oral hearing was requested. We reverse the Section 2(d) refusal and affirm the refusal to register based on the disclaimer requirement.

---

following lining statement: "The lining is a feature of the mark and does not indicate color."

In view of its bearing on the likelihood of confusion issue, we first consider the disclaimer requirement. An examining attorney may require an applicant to disclaim an unregistrable component of a mark otherwise registrable. Trademark Act Section 6(a). Merely descriptive terms are unregistrable, under Trademark Act Section 2(e)(1), and, therefore, are subject to disclaimer if the mark is otherwise registrable. Failure to comply with a disclaimer requirement is grounds for refusal of registration. See In re Omaha National Corp., 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987); In re Richardson Ink Co., 511 F.2d 559, 185 USPQ 46 (CCPA 1975); In re National Presto Industries, Inc., 197 USPQ 188 (TTAB 1977); and In re Pendleton Tool Industries, Inc., 157 USPQ 114 (TTAB 1968).

A term is deemed to be merely descriptive of goods or services, within the meaning of Section 2(e)(1), if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services. See, e.g., In re Gyulay, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987), and In re Abcor Development Corp., 588 F.2d 811, 200 USPQ 215 (CCPA 1978). A term need not immediately convey an idea of each and every specific feature of the applicant's goods or services

_____

[2] Registration No. 2559490, issued April 9, 2002.

3

in order to be considered merely descriptive; it is enough that the term describes one significant attribute, function or property of the goods or services. See In re H.U.D.D.L.E., 216 USPQ 358 (TTAB 1982); In re MBAssociates, 180 USPQ 338 (TTAB 1973). On the other hand, if imagination, thought or perception is required to reach a conclusion on the nature of the goods or services, the mark is suggestive and registrable. See In re Nett Designs, 236 F.3d 1339, 57 USPQ2d 1564 (Fed. Cir. 2001); and In re Gyulay, supra. It has long been acknowledged that there is a thin line between terms that are merely descriptive and those that are suggestive. See In re Atavio Inc., 25 USPQ2d 1361 (TTAB 1992).

Whether a term is merely descriptive is determined not in the abstract, but in relation to the goods or services for which registration is sought, the context in which it is being used on or in connection with those goods or services, and the possible significance that the term would have to the average purchaser of the goods or services because of the manner of its use. That a term may have other meanings in different contexts is not controlling. In re Bright-Crest, Ltd., 204 USPQ 591, 593 (TTAB 1979).

The burden is initially on the United States Patent and Trademark Office to make a prima facie showing that the

4

mark or word in question is descriptive from the vantage point of purchasers of applicant's goods and, where doubt exists as to whether a term is descriptive, such doubt should be resolved in favor of the applicant. In re Merrill Lynch, Pierce, Fenner, and Smith, Inc., 828 F.2d 1567, 4 USPQ2d 1141, 1144 (Fed. Cir. 1987).

In support of the refusal, the examining attorney has made of record "a sampling of 106 third-party registrations in which the term SOLUTIONS is disclaimed when used in connection with computer goods in International Class 9."[3] Br. unnumbered p. 2. The examining attorney argues that this evidence shows that it is "the prevailing PTO practice to disclaim the word SOLUTIONS when used in connection with computer hardware of the sort listed in the applicant's identification" and that "the word SOLUTIONS has become commonly used and widely recognized in the information technology sector as a descriptor of computers and computer-related goods." Br. unnumbered p. 3.

Applicant argues that the word SOLUTIONS "is not directly indicative of the particular qualifying properties of the product." Br. p. 15.

---

[3] The examining attorney submitted the results of his search for active registrations for computer goods that include a disclaimer for the word SOLUTIONS in the mark. The search retrieved 106 registrations and the examining attorney submitted the printouts of approximately twenty of those registrations.

Third-party registrations can be used in the manner of a dictionary definition to illustrate how a term is perceived in the trade or industry. In re J.M. Originals Inc., 6 USPQ2d 1393, 1394 (TTAB 1987) ("Said third party registrations are of use only if they tend to demonstrate that a mark or a portion thereof is suggestive or descriptive of certain goods and hence is entitled to a narrow scope of protection. Used in this limited manner, 'third party registrations are similar to dictionaries showing how language is generally used.'") (Internal citation omitted.) "Such third party registrations show the sense in which the word is used in ordinary parlance and may show that a particular term has descriptive significance as applied to certain goods or services." Institut National Des Appellations D'Origine v. Vintners International Co., 958 F.2d 1574, 22 USPQ2d 1190, 1196 (Fed. Cir. 1992) (third-party registrations found to be "persuasive evidence").

As shown by the examining attorney's evidence, the term "SOLUTIONS" has been regarded as merely descriptive in a number of third-party marks, the registrations of which include disclaimers of the term "SOLUTIONS." See General Mills Inc. v. Health Valley Foods, 24 USPQ2d 1270, 1277 (TTAB 1972) ("Although the registrations are not evidence

6

of use, the registrations show the sense in which the term 'fiber' is employed in the marketplace, similar to a dictionary definition."). The three third-party registrations submitted by applicant for marks that include the word SOLUTIONS, without a disclaimer thereof, for computer-related goods, do not rebut the twenty third-party registrations made of record by the examining attorney.[4] Reg. No. 2886241 for the mark REAL TIME SOLUTIONS is registered under Section 2(f) of the Trademark Act based on acquired distinctiveness of such otherwise merely descriptive words and Reg. No. 2881792 for the mark ENERGYSOLUTIONS is a compound word where a disclaimer would not be required. TMEP 1213.05(a) (4th ed. April 2005). Reg. No. 2885045 for the mark KLIKLOK-WOODMAN PACKAGING SOLUTIONS is for, inter alia, electronic and pneumatic control systems and computer software for controlling automated product packaging machines. The computer software in this registration appears to be ancillary to the packaging machines, however, to the extent it may support applicant's position, it is only one registration,

---

[4] The examining attorney's objection to these exhibits, attached to applicant's brief, as untimely is overruled. They were properly made of record during examination on October 14, 2004 in response to the May 20, 2004 office action.

in contrast to the twenty registrations submitted by the examining attorney.

Further, we take judicial notice of the following definition for the word SOLUTION:[5]

> An application of computers and software to a particular problem. The New Penguin Dictionary of Computing (Penguin Books 2001).

This definition simply confirms that the term SOLUTIONS when used in association with computer hardware has a descriptive meaning. In the context of computer goods, SOLUTIONS is a term that is used to describe the purpose of the computer to resolve a problem. In view thereof, we find that SOLUTIONS is descriptive of applicant's goods and that the required disclaimer is appropriate.

We now turn to the refusal under Section 2(d). Our determination of the issue of likelihood of confusion is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). See also, In re Majestic Distilling Co., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003). In any likelihood of confusion analysis, however, two key

---

[5] University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., 213 USPQ 594, 596 (TTAB 1982), aff'd, 703 F.2d 1372, 217

considerations are the similarities or differences between the marks and the similarities or differences between the goods and/or services. See Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d 1098, 192 USPQ 24 (CCPA 1976). See also, In re Dixie Restaurants Inc., 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).

We turn first to a consideration of the goods identified in the application and the cited registration. It is well settled that goods need not be similar or competitive in nature to support a finding of likelihood of confusion. The question is not whether purchasers can differentiate the goods themselves, but rather whether purchasers are likely to confuse the source of the goods. See Helene Curtis Industries Inc. v. Suave Shoe Corp., 13 USPQ2d 1618 (TTAB 1989). Further, we must consider the cited registrant's goods as they are described in the registration and we cannot read limitations into those goods. See Hewlett-Packard Co. v. Packard Press Inc., 281 F.3d 1261, 62 USPQ2d 1001 (Fed. Cir. 2002); and Octocom Systems Inc. v. Houston Computer Services Inc., 918 F.2d 937, 16 USPQ2d 1783 (Fed. Cir. 1987). If the cited registration describes goods or services broadly, and there

---

USPQ 505 (Fed. Cir. 1983) (Board may take judicial notice of dictionary definitions).

9

is no limitation as to the nature, type, channels of trade or class of purchasers, it is presumed that the registration encompasses all goods or services of the type described, that they move in all channels of trade normal for these goods, and that they are available to all classes of purchasers for the described goods.  See In re Linkvest S.A., 24 USPQ2d 1716 (TTAB 1992).

The examining attorney submitted the following definition of "computer server":

> A computer or program that controls a central repository of data that can be downloaded and manipulated in some manner by a client.  The American Heritage Dictionary of the English Language (3d ed. 1992).

We also take judicial notice of the following definition of "server":

> 5. Computer Science. A. A file server. B. A computer that processes requests for HTML and other documents that are components of webpages. The American Heritage Dictionary of the English Language (4th ed. 2000).

Therefore, with regard to the item "computers," as identified in Registration No. 2559490, because the identification of goods in the cited registration is not limited to specific types of computers or to specific channels of trade, it must be presumed that registrant's computers encompass applicant's computer hardware, namely, communications servers, and that they are sold through the

ordinary channels of trade for such goods.  Accordingly, for purposes of the likelihood of confusion analysis, applicant's computer hardware, namely communications servers, because they are encompassed within the identification of "computers," must be considered legally identical to the cited registrant's goods and must be deemed to be sold in the same channels of trade.

In view of the above, the du Pont factor of the similarity of the goods weighs in favor of a finding of likelihood of confusion.  In addition, because the identification of goods in the cited registration is not limited to any specific channels of trade, we presume an overlap in trade channels and that the goods would be offered to all normal classes of purchasers.  Applicant's attempt to distinguish the goods and channels of trade impermissibly reads a limitation into the registration. The identification of goods in the registration does not limit the channels of trade in any way, nor does it exclude communication servers from its broad identification of computers.

We agree with applicant's argument that the goods are "normally marketed and provided to persons with a high degree of knowledge and familiarity concerning the goods" and are not "purchased impulsively."  Br. pp 12-13.  Thus,

we find that these items are not impulse purchases, a factor that weighs in favor of applicant.

Applicant's argument that there is a difference in their respective customers in that its communication servers "would be sold to computer science specialists, engineers, [and] corporate buyers" in contrast to the registrant's computers and computer peripherals "which, in general, would be sold to a mass buying public" (Br. p. 13) is not persuasive in view of our determination that registrant's computers encompass applicant's servers. Thus, the customer base for applicant's and registrant's goods, as determined by the identification of goods, overlaps. However, the common purchasers for applicant's and registrant's goods must be considered sophisticated, and this factor also weighs in favor of applicant. See Electronic Design & Sales, Inc. v. Electronic Data Systems Corp., 954 F.2d 713, 21 USPQ 1388, 1392 (Fed. Cir. 1992) ("Where the purchasers are the same, their sophistication is important and often dispositive because '[s]ophisticated consumers may be expected to exercise greater care.'" Internal citation omitted.)

We turn now to the first du Pont factor, i.e., whether applicant's mark and opposer's marks are similar or dissimilar when compared in their entireties in terms of

12

appearance, sound, connotation and commercial impression. We make this determination in accordance with the following principles. The test, under the first du Pont factor, is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression that confusion as to the source of the goods offered under the respective marks is likely to result. The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. See Sealed Air Corp. v. Scott Paper Co., 190 USPQ 106 (TTAB 1975). "When marks would appear on virtually identical goods or services, the degree of similarity [between the marks] necessary to support a conclusion of likely confusion declines." Century 21 Real Estate Corp. v. Century Life of America, 970 F.2d 874, 23 USPQ2d 1698, 1701 (Fed. Cir. 1992), cert. denied, 506 U.S. 1034 (1992). Furthermore, although the marks at issue must be considered in their entireties, it is well-settled that one feature of a mark may be more significant than another, and it is not improper to give more weight to this dominant feature in determining the commercial impression created by the mark. See In re National Data Corp., 753 F.2d 1056, 224 USPQ 749 (Fed. Cir.

13

1985).  Finally, the meaning or connotation of a mark must be determined in relation to the named goods or services. See In re Sears, Roebuck and Co., 2 USPQ2d 1312 (TTAB 1987); and In re British Bulldog, Ltd., 224 USPQ 854 (TTAB 1984).

Applicant relies on several third-party registrations to show that the term "BOX" for computer-related goods is very weak.  As noted above, third-party registrations can be used in the manner of a dictionary definition to illustrate how a term is perceived in the trade or industry.  In re J.M. Originals Inc., supra.  Here, we find the evidence persuasive to show that BOX is a weak term in the computer industry in that it signifies a computer or computer related device.  See, e.g., Reg. No. 2012277 for BOX-PC for, inter alia, computers; Reg. No. 2362531 for BOX and design for, inter alia, transmission and data processing equipment; Reg. No. 1418233 for UNIBOX for, inter alia, computers; Reg. No. 2517211 for FIXBOX for, inter alia, computer hardware; Reg. No. 2575397 for HERBYBOX for, inter alia, Internet communications server; Reg. No. 2459563 for STREAMBOX for, inter alia, computer software; and Reg. No. 2664032 for SMARTBOX for, inter alia, microprocessors.  Further, we take judicial notice of the following definitions of "BOX":

14

> Slang for hardware. A box can be a PC or server or any device, although it is typically one that processes information. For example, a "UNIX box" is just another way of saying "UNIX computer." Computer Desktop Encyclopedia (9th ed. 2001).
>
> 1. (slang) A computer, especially a small one. For example, a Linux box is a computer that runs Linux. Dictionary of Computer and Internet Terms (7th ed. 2000).

These definitions confirm that the term BOX is, at a minimum, highly suggestive of computers and we accord this term a very narrow scope of protection. Therefore, we cannot say, due to its highly suggestive nature, that BOX dominates over the prominent design in registrant's mark. Registrant's stylistic design of what appears to be a monitor with an antenna-like check mark, stands in stark contrast to applicant's highly stylized mark which consists of the phrase BOX SOLUTIONS with the word BOX depicted with white slash marks cutting through it. Thus, the marks have substantially different appearances and commercial impressions. The connotation of the marks, derived from the common word BOX, implying computer, is similar, but applicant's mark has a slight variation due to the additional word SOLUTIONS which creates a difference in sound. Overall, we find the differences outweigh the similarities given the weakness of the common element. King Candy Co. v. Eunice King's Kitchen, Inc., 182 USPQ

108, 110 (CCPA 1974) (confusion unlikely when marks are of such non-arbitrary nature that the public easily distinguishes slight differences in the marks under consideration). See also Colgate-Palmolive Co. v. Carter-Wallace, Inc., 432 F.2d 1400, 167 USPQ 529 (CCPA 1970) (because common element in marks is a common noun or adjectival word of everyday usage in the English language and has a laudatory or suggestive indication, PEAK PERIOD for personal deodorants is not confusingly similar to PEAK for dentifrice); and Sure-fit Products Co. v. Saltzson Drapery Co., 254 F.2d 158, 117 USPQ 295 (CCPA 1958) (where a party has a weak mark, competitors may come closer to the mark than would be the case with a strong mark without violating the party's rights; marks SURE-FIT and RITE-FIT, both for slip-covers, held not confusingly similar). This is true, in particular, here, where the sophisticated purchasers, who would be the common purchasers of the goods, would readily understand the meaning of BOX for computers and would not assume that the goods came from a common source simply on the basis of the word BOX appearing in both marks.

In conclusion, we find that, despite the legal identity of the goods and the overlap in trade channels and customers, the marks are sufficiently dissimilar,

16

particularly in view of the very weak nature of the common element BOX and the nature of the overlapping goods, which are not impulse-purchase items and are bought by sophisticated purchasers, such that confusion is not likely between applicant's BOX SOLUTIONS in stylized form mark and the cited registrant's BOX and design mark.

**Decision**:  The refusal to register under Section 2(d) is reversed, but the refusal to register based on applicant's failure to disclaim SOLUTIONS is affirmed. However, if applicant submits the required disclaimer of SOLUTIONS to the Board within thirty days, this decision will be set aside as to the affirmance of the disclaimer requirement, and the application then shall proceed to publication.[6]  See Trademark Rule 2.142(g), 37 C.F.R. §2.142(g).

---

[6] The standardized printing format for the required disclaimer text is as follows:  "No exclusive right to use SOLUTIONS is claimed apart from the mark as shown."  TMEP §1213.08(a) (4th ed. April 2005).