81 C.C.P.A.(Patents)

CRIME CONFESSIONS, Inc., v. FAWCETT PUBLICATIONS, Inc.

Patent Appeal No. 4788.

Court of Customs and Patent Appeals.

Dec. 7, 1943.

Proceeding by Crime Confessions, Inc., for registration of a trade-mark, opposed by Fawcett Publications, Inc. From a decision of the Commissioner of Patents reversing a decision of the Examiner of Interferences and sustaining the opposition, Crime Confessions, Inc., appeals.

Joseph Schultz, of New York City (Henry E. Schultz, of New York City, of counsel), for appellant.

Asher Blum, of New York City (Hugo Mock, of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

The appellant herein made application in the United States Patent Office for the registration of the term "Crime Confessions" as a trade-mark for a magazine. The appellee filed notice of opposition to the registration based upon its prior ownership and use of the registered trade-marks "True Confessions," "Heart Confessions," and "Romantic Confessions," all for periodical magazines published and sold in interstate commerce. In the proceedings in the Patent Office and before this court, appellee relied chiefly upon its trade-mark "True Confessions," registered under the Trade-Mark Act of 1905 as No. 163,713, January 23, 1923, and later renewed, though it called attention to its ownership of the other two trade-marks "Heart Confessions" and "Romantic Confessions."

Appellants alleges use of its mark "Crime Confessions" since March 1939.

The Examiner of Interferences, believing that there would be no likelihood of confusion in trade, dismissed the notice of opposition and adjudged that the applicant was entitled to registration of its said mark.

The Commissioner of Patents reversed the decision of the Examiner of Interferences and sustained the opposition. Appellant has here appealed from the decision of the commissioner.

Appellant contends, first, that the marks are so dissimilar as to justify the conclusion that there is no reasonable probability of confusion in trade as a result of concurrent use of the marks involved; second (we quote from appellant's brief), that "The general rules relating to trademarks have been modified and relaxed when applied to magazine titles. Similarity in this type of mark is the rule rather than the exception"; third (again quoting from appellant's brief), that the "Opposer-appellee should not be permitted to appropriate for its exclusive use the generic word 'Confessions', which has become purely descriptive of a type or character of magazine rather than any single publication in the field"; and fourth, that appellee has taken a position here inconsistent with its prior position taken in the Patent Office with respect to its registration of "Heart Confessions" when the mark "Love Confessions" was cited as an objection to registration.

In oral argument the character of the two marks "True Confessions" and "Crime Confessions," with reference to their descriptiveness, was discussed. The argument would seem to go to the question of the registrability of either of the marks. This consideration, and appellant's second contention with reference to the distinction that should be made between trade-marks for magazines and other publications and ordinary trade-marks, would seem to require that we consider that question first.

On a number of occasions in cases similar to that at bar we have been confronted with the same question we are considering here, and we recognize that such marks as "Popular Mechanics," involved in Fawcett Publications, Inc., v. Popular Mechanics Co., 58 F.2d 838, 19 C.C.P.A., Patents, 1241, "Popular Photography," involved in American Photographic Publishing Co. v. Ziff-Davis Publishing Co., 127 F.2d 308, 29 C.C.P.A., Patents, 1014; and "Architecture," involved in Architectural Catalog Co., Inc., v. F. W. Dodge Corporation, 136 F.2d 1008, 1009, 30 C.C.P.A., Patents, 1215, suggest the proposition that there may be some anomaly in applying the same rule in construing the Trade-Mark Act of 1905, 15 U.S.C.A. § 81 et seq., as applicable alike in all respects to both ordinary marks and those used in connection with publications.

In the Architectural Catalog Co. case, supra, where the mark sought to be registered was "Architecture and Design" and the registration was opposed by the owner of the marks "Architecture," "The Architectural Record," "The American Architect," and "American Architect and Architecture," we heard the same argument, substantially, as that which appellant here stresses under its second contention. There we found it sufficient to say:

"It is well known that there are published throughout the United States many newspapers, magazines, and other periodicals which bear, in whole or in part, the same titles. In what number titles of such

publications have been registered as technical trade-marks under the Trade-Mark Act of 1905, we are not advised, but, so far as we are advised, no question of the right so to register titles has ever been raised.

"At any rate, applicant has not raised any question here respecting the validity of opposer's registrations, and applicant's right to register the title at issue as a technical trade-mark under the 1905 act must be considered under, and tested by, the statutes and rules applicable to registration of marks for merchandise. In other words, the periodicals of applicant and opposer must be regarded as merchandise in the sense in which the term 'merchandise' is used in section 5 (b) of the 1905 Trade Mark Registration Act. * * *"

Just when the Patent Office and the courts began to recognize that the name of a printed publication was a proper subject matter to justify the registration thereof as a trade-mark under the 1905 Act, we are not informed; but long before this court had jurisdiction of trade-mark appeals from the Patent Office, the same rules were applied to the registration of trade-marks relating to publications as were applied to other kinds of trade-marks. Our decisions have followed the trend of the settled rule applicable to the situation as has been followed by the Patent Office and the appellate tribunals for many years.

█ It would seems obvious to all that the terms "Crime Confessions" and "True Confessions" are descriptive. While we cannot pass upon that question in this kind of proceeding, it seems proper to suggest that since the registration of purely descriptive trade-marks is clearly a violation of the law, it would be better for the Patent Office to comply with the law rather than to follow the precedents that have been followed throughout the years.

█ Appellant's third contention—that "Confessions," being the name of a class of magazines, cannot be appropriated by the first user and that the word "Confessions" therefore should not be permitted to be controlling in the determination of confusing similary—has, we think, been answered hereinbefore. As to appellant's fourth contention—that appellee's conduct here is inconsistent with its conduct elsewhere—this is a matter with which we cannot be concerned.

In this view of the case, the sole question which is controlling of our decision is whether or not the concurrent use of the marks "True Confessions" and "Crime Confessions" as trade-marks on substantially identical goods is likely to confuse the public.

A crime confession might be a true confession, or vice versa. In each instance, the title of the magazine would unquestionably suggest to the purchasing public that the printed matter contained admissions of certain immoral, unethical, or illegal acts. "Confession" is defined in Funk & Wagnalls Standard Dictionary as follows: "1. The act of confessing; the avowal or acknowledgment of an action, especially of one that is inculpatory or sinful; admission; as, a *confession* of crime. * * *"

█ It seems clear, therefore, that the term "Confessions" in the two marks suggests immediately to the purchasing public that the literature contains facts concerning subject matter falling into the same category. Unquestionably, the word "Confessions" in the titles of the magazines is the part of each mark which indicates the character of the contents of the magazines and, for that reason, would be that portion of the mark which would have most to do in indicating origin. The terms "True" and "Crime" have different meanings, different sounds, and different appearances, but, as pointed out above, a crime confession may be embraced in a true confession, and when we examine the marks as a whole, which we must do under the settled law, it would seem that the words "True" and "Crime" in the respective marks are not calculated to eliminate the likelihood of confusion where the two marks are concurrently used upon literature of the kind described. Under such circumstances we cannot escape the conclusion reached by the commissioner with reference to the likelihood of confusion.

█ Under our jurisdiction, the registered trade-mark "True Confessions" and the others which appellee has pleaded in its notice of opposition must be considered as valid. They come to us with that presumption, and this court has no authority to pass upon the question of the validity of the registered marks in this kind of proceeding.

The mandate of the statute, 15 U.S.C.A. § 85, is that: "* * * trade-marks which are identical with a registered or

known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties, or which so nearly resemble a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers *shall not be registered.* * * *"
[Italics ours]

For the reasons stated, the decision of the Commissioner of Patents is affirmed.

Affirmed.