50 CCPA

**JENKINS PUBLISHING COMPANY, Appellant,**

v.

**METALWORKING PUBLISHING COMPANY, Inc., Appellee.**

Patent Appeal No. 6939.

United States Court of Customs and Patent Appeals.

April 25, 1963.

Rehearing Denied June 3, 1963.

A. Yates Dowell, A. Yates Dowell, Jr., Washington, D. C., for appellant.

Rowland V. Patrick, Boston, Mass., for appellee.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Associate Judges.

MARTIN, Judge.

Appellant, Jenkins Publishing Company, appeals from a decision of the Patent Office Trademark Trial and Appeal Board which granted the petition of appellee, Metalworking Publishing Company, Inc. to cancel appellant's supplemental register Registration No. 676,145 issued March 24, 1959. The registration which appellee seeks to cancel is for a monthly trade publication and consists of the words WESTERN METALWORKING.

Appellee is the owner of registrations[1] of METAL-WORKING for periodicals published from time to time. It is also the owner and publisher of the monthly trade journal METALWORKING, which is intended for the metalworking industry. Appellee has been publishing this trade journal since 1956. The trade journal METALWORKING is a so-called "controlled circulation" publication, which means that it is distributed free to its readers. The readers, who are selected from companies in the metalworking industries that employ fifty or more people, have the responsibility for the selection and purchase of metalworking equipment and supplies. The current circulation of METALWORKING is approximately 34,000, roughly ten per cent of which is in the western part of the United States. Appellee's revenue source is from advertising in METALWORKING which advertising is obtained through solicitation of advertisers and their advertising agencies throughout the country.

Appellant also publishes a monthly trade journal intended for the metalworking industry and has, since 1958, used WESTERN METALWORKING as a title for its publication. WESTERN METALWORKING has a "controlled circulation"[2] slightly in excess of 9,000 and

---

1. Reg. No. 544,986 on Supplemental Register issued July 10, 1951 to a predecessor. Reg. No. 632,719 on Principal Register, issued August 14, 1956 to a predecessor.

2. At the oral argument attorney for appellant agreed that both appellant and appellee distributed their publication in the same manner.

this circulation is essentially restricted to thirteen Western States. Advertising in appellant's trade journal is directed to people in the metalworking trade.

The board in granting appellee's petition for cancellation stated:

"The inclusion of the geographical term 'WESTERN' in respondent's mark 'WESTERN METALWORKING' is insufficient to obviate a likelihood of confusion. Unquestionably, the word 'METALWORKING' in the titles of the two magazines would be indicative of origin. Readers of 'METALWORKING' and advertisers and prospective advertisers familiar with that publication may upon encountering 'WESTERN METALWORKING' readily assume that the latter is a sectional magazine distributed by the publishers of 'METALWORKING' or that it is the western edition of the same magazine. It is concluded that there is a likelihood of confusion. Since respondent did not have the exclusive use of the trademark during the period January 23, 1958 to January 23, 1959, when its application for registration on the Supplemental Register was filed, respondent, therefore, was not entitled to register its mark at the time it filed its application."

Appellant argues that the board is in error in holding that the inclusion of WESTERN in appellant's trademark WESTERN METALWORKING is insufficient to obviate a likelihood of confusion. Appellant contends that the term "metalworking" is generic to the industry about which and to which the parties' publications are directed[3] and that the use of a sectional indication with a generic title is a well known practice for distinguishing publications of different origin.

Appellee, on the other hand, argues that the addition of WESTERN does not remove the likelihood of confusion which would concededly be present were WESTERN omitted. Appellee contends that appellant has made no competent showing that any trade practice precludes the likelihood of confusion between METALWORKING and WESTERN METALWORKING publications.

The products and the channels of trade[4] are the same; therefore, we come directly to the ultimate question of whether METALWORKING and WESTERN METALWORKING are likely to cause confusion in that trade.

■ It must be remembered that titles of publications must not be considered any differently than trademarks for other products. Crime Confessions, Inc. v. Fawcett Publications Inc., 139 F. 2d 499, 31 CCPA 760; In re Wings Publishing Co., Inc., 148 F.2d 214, 32 CCPA 926.

■■ We start with the fact that appellee first had its trademark registered on the Supplemental Register but now has it registered on the Principal Register under a 2(f) proceeding, which indicates that to the satisfaction of the Patent Office, the very commonplace word "metalworking" had acquired a secondary meaning insofar as identifying and distinguishing appellee's magazine. Under these circumstances this trademark must be considered by us to have gained that status in that particular field by the use, promotion and salesmanship of appellee. This means that we must recognize all the rights that such earned status has acquired, which seems to us to be a different situation than when the trademark has been registered on the Supplemental Register only, as there it is required only that it is capable of distinguishing the goods with which it is used. However, when a commonplace word acquires a secondary meaning as an identifying name of a particular product, that commonplace word no longer is commonplace insofar as its meaning in that par-

---

3. The board found that "metalworking" is the generally accepted name for an industry and has been so used.

4. The "purchasers" in this instance are the purchasers of the advertising of the magazine.

ticular field is concerned and others cannot treat it as if it had not acquired that new status in that field.

Furthermore, we have here a situation where appellant is appropriating appellee's whole trademark and is incorporating it in its mark by the addition of a geographical descriptive word. Even though the practice seems to be that in this field publishers do not add geographical words before their titles to connote specific geographical editions, there is no evidence to indicate that this has never been done or that it would not be done in the future. If we decide for appellant, we would preclude appellee from following this course. We must ask ourselves whether appellee's registration does not give it the right to make this addition to its title if it so desires.

It is significant that 10% of appellee's circulation is in the western part of the United States and it could be expected to grow as the years go on. Appellee has two western representatives who work out of western offices and call upon western advertisers. Since some of appellee's business is in the West, the word WESTERN in appellant's mark becomes a more important factor than if this situation did not exist.

As to the likelihood of confusion itself, we quote the following testimony of the vice president of appellee which seems reasonable to us even though it comes from an interested party. It reads:

"DQ122. Why are you prosecuting this proceeding to cancel Jenkins Publishing Company's registration of 'Western Metalworking'? A. We feel it leads to confusion among our advertisers and their agencies as to the differentiation between the two books.

"DQ123. How do you feel that such a confusion can come about? A. Well, it is largely from the way in which advertising space is sold and bought. As I previously testified, the great percentage of advertising space is purchased by advertising agencies operating for their clients and each agency handling a number of clients will have a great many magazines making presentations to them during the course of a year, upwards of maybe a thousand different magazines. The result is that it is difficult, if not impossible, for an agency media buyer or space buyer, as they are called, or agency account executive to clearly differentiate in his mind all of the fine points between the different magazines, particularly when their title is generally the same or closely the same, with the result that they may actually place space in a magazine of one name, thinking they are actually buying a magazine of another name.

"DQ124. Do you feel that to be true as between 'Metalworking' and 'Western Metalworking'? A. I believe that could be particularly true there, because they might feel that 'Western Metalworking' was merely a Western edition of 'Metalworking.'

"DQ125. And how would your man introduce himself when he is making a presentation for your publication? A. He would be known as the Western representative of 'Metalworking.' This also could lead to confusion because the representative of 'Western Metalworking' and the Western representative of 'Metalworking' could get confused."

According to a witness for appellant, who is an executive of an advertising agency, the title of a magazine is not the important factor, it is the magazine itself and its contents that are significant when considering it for the placement of advertisements. From the advertising agency's point of view this is probably true, but if this is the attitude of advertising agencies it would seem most important for the publisher to try to keep his magazine distinguished from others in the same field. According to this same witness, he has one client who requires him "to sit down and talk to 75 representatives [of magazines]" when considering where to place advertising

for this client. It seems reasonable to us, if that is the practice, that names such as METALWORKING and WESTERN METALWORKING might be confused by the agencies. This witness further testified:

"XQ70. Have you experienced any confusion among magazines in your buying of space, some mixup? A. No.

"XQ71. Never had an instance of any mixup? A. You are stretching me back. Let me think a minute.

"The only one I can think of that was a mixup at all was McGraw-Hill's publication of Aviation Week, and I think it was Conover-Mast or something like that.

"I don't know which one put it out, Aviation Week or Aviation Age, I don't know which publisher it is, but Aviation Week and Aviation Age, both national books, both the only two publications of any consequence in the field.

"When I was first in the business, I was confronted with those two publications, and I had a slight confusion, but I was brand new in space buying at the time.

"I might qualify. I think it was more my newness in space buying."

It seems to us that the question to be answered is what happens when one of these advertisers or one of the representatives of an advertising agency is confronted with WESTERN METALWORKING having heard or seen METALWORKING at some other time. We think confusion is likely.

Appellant has included in the record a long list of trade names demonstrating that it is not unusual for one publisher to designate his trade magazine by the name of a particular trade, business or commodity, and another publisher to use the same name but add a geographical designation before it. This may be all well and good but it is not apparent that every situation in which marks differ only by the addition of a geographical designation will be free of a likelihood of confusion.

It is understandable that one wishing to serve a particular trade in this trade magazine field desires to use the name of the trade so that the magazine will become identified with that trade but it seems that the newcomer should be required to do more to distinguish its magazine from a prior user than merely adopt the prior user's whole title and preface it with a geographical designation. We have considered appellant's arguments, nevertheless, we come to the conclusion that confusion is likely, but even if this were not so, we have sufficient doubt that appellant can use the title WESTERN METALWORKING without there being a likelihood of confusion. Accordingly, under the law we must hold for appellee, the prior user. We therefore *affirm* the decision of the board.

Affirmed.

RICH, J., concurs in result only.