59 CCPA

**LEVER BROTHERS COMPANY,**
Appellant,

v.

**The BARCOLENE COMPANY,**
Appellee.

**Patent Appeal No. 8554.**

United States Court of Customs
and Patent Appeals.
July 27, 1972.

Brumbaugh, Graves, Donohue & Raymond, New York City, attorneys of record, for appellant. Mark N. Donohue and William P. Walsh, New York City, of counsel.

L. William Bertelsen, Boston, Mass., attorney of record, for appellee.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

**1108**

BALDWIN, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board [1] dismissing appellant Lever Brothers Company's opposition to the application of the Barcolene Company [2] to register the following mark for a household cleaner:

[A6104]

The opposition was based on appellant's prior use and registration of the mark ALL in connection with household cleansing products. The mark has been used by appellant or its predecessor in title, Monsanto Chemical Company, since as early as 1948. "Advanced ALL" has been used since 1948, "Fluffy ALL" and "Dishwasher ALL" since 1955 and "Cold Water AI L" since 1963. Testimony of appellant's witnesses shows that the products were sold through such outlets as supermarkets, department stores, hardware stores, variety stores and some drug stores. There have been sales of appellant's products in all 50 states and through overseas outlets all over the world. Advertising of the products by appellants has been extensive.

Appellant has always displayed the mark ALL in distinctive, stylized, lower case letters. Although the word ALL has been displayed on packages in association with another word such as "Advanced," "Fluffy," etc., the word ALL is printed in substantially larger sized letters and has been emphasized in the display of the marks on the package.

Appellee's application for registration as amended states that the mark is for "household cleaner for windows, mirrors, chrome, enamel, and tile, distributed as a household item in retail grocery and department stores."

The board held that the marks as applied to the goods were not so similar as to be likely to cause confusion or mistake:

> * * * [C]onfusion as to source is not likely to occur merely because of the inclusion in applicant's mark of the word "all". In arriving at this conclusion, we have not overlooked the fact that the designation "all" for detergent products has achieved a considerable degree of commercial success and recognition and that opposer, by reason thereof, possesses a substantial good-will and property right therein. But, we do not believe that opposer's rights in "all" are such as to preclude the subsequent registration of marks comprising this term where the combination has a well known meaning which would be likely to be recognized as such by the average purchaser. * * * [T]he commercial impression engendered by applicant's mark is derived not from the component words "all" or "clear", per se, but rather from the mark as a whole. When the term "all clear!" is encountered in the market place in connection with a house hold [sic] cleaner, the average purchaser will recognize it as a play on the expression "ALL CLEAR" popularized in connection with air raid drills, and used by applicant to suggest that the use of its product will produce entirely clear or clean surfaces. We are not persuaded, as opposer urges, that it would suggest "one more preparation for cleaning which originates from the same source as the other 'all' products long marketed and popularized by opposer".

1. Abstracted at 160 USPQ 826 (1969).

2. Application Serial No. 166,968, filed April 18, 1963.

We agree with the board. While appellant points out some similarities between the word ALL as it is used by both parties, inspection of the two marks also shows some obvious differences. Considering appellee's mark *in its entirety*, we are convinced that there is no likelihood of confusion. Accordingly, the decision of the board is affirmed.

Affirmed

WORLEY, Chief Judge (dissenting).

Section 2(d) of the Lanham Act, which controls our deliberations here, prohibits registration of a trademark if it *"consists of or comprises a mark which so resembles a mark registered in the Patent Office * * * as to be likely*, when applied to the goods of the applicant, *to cause confusion, or to cause mistake, or to deceive."* (Emphasis supplied.)

With due respect to the Trademark Trial and Appeal Board and the majority, I am convinced that the record fails to support the decision appealed from, and that applicant's proposed mark "all clear!" "so resembles" opposer's long registered trademark "all" as to make confusion, mistake or deception not only "likely" but, indeed, inescapable.

While I am in complete agreement with the board's factual findings that:

Opposer is clearly the prior user. Moreover, applicant's product as described in its application and opposer's detergent products are distributed as household items through the *same channels of trade* to the same classes of purchasers and are recommended for *similar cleaning uses. Under these circumstances, the marketing of these products under the same or similar marks would be likely to cause confusion or mistake as to source. * * ** (Emphasis supplied.),

I respectfully suggest, however, that the board erred in holding that:

* * * [C]onfusion as to source is not likely to occur merely because of the inclusion in applicant's mark of the word "all". * * * we do not believe that opposer's rights in "all" are such as to preclude the subsequent registration of marks comprising this term *where the combination has a well known meaning which would be likely to be recognized as such by the average purchaser. * * * [T]he commercial impression engendered by applicant's mark is derived not from the component words "all" or "clear", per se, but rather from the mark as a whole. When the term "all clear!" is encountered in the market place in connection with a house hold cleaner, the average purchaser will recognize it as a play on the expression "ALL CLEAR" popularized in connection with air raid drills*, and used by applicant to suggest that the use of its product will produce entirely clear or clean surfaces. We are not persuaded, as opposer urges, that it would suggest "one more preparation for cleaning which originates from the same source as the other 'all' products long marketed and popularized by opposer." [Emphasis supplied.]

I am unable to find any evidence in this record to support the board's assumption, to which it attaches unduly critical significance, that the average purchaser will recognize "all clear!" as a play on an expression used to denote cessation of air raid drills, an assumption I suggest is tantamount to taking judicial notice of a supposed set of facts clearly incapable of justifying application of that judicial doctrine. I trust I am not compounding the error of the board in also suggesting that, while the board's assumption might have been tenable with respect to other generations in other parts of the globe, it becomes tenuous in light of the current crop of consumers, many of whom were born during or after World War II—thus it is at best speculative whether they would necessarily recognize the supposed play on words. Is it not also just as reasonable to suggest that the average purchaser would associate "all clear!" with a change in the weather? Appellant's suggestion

that the average purchaser would mistakenly associate "all clear!" with the product "all" and its manufacturer appears eminently reasonable as well. The trouble is no one, absent appropriate evidence, can say with certainty just how the average purchaser will react under the facts here.

It seems clear to me, however, that when "all" and "all clear!" are applied to the same products, competitive in both price and purpose, and are sold over-the-counter through the same channels of trade, the average purchaser as well as the registrant are denied the protection Congress intended the Lanham Act to provide. Aside from that, the board virtually ignores the rights which have vested in opposer by virtue of its having sold well in excess of two billion pounds of its "all" products and having spent more than 100 million dollars in advertising them. The newcomer has incorporated the mark "all" in its entirety, including lower case type style, as part of its own mark, a practice this court has often viewed with disfavor.[1] It would seem that a party genuinely concerned in distinguishing its product from those of others, and in developing its own good will under its own mark, could have chosen a different trademark for its product without risking unnecessary encroachment on opposer's mark, and has acted at its peril here in not doing so.[2] Any doubt on the matter should be resolved against the newcomer in favor of the prior user. United States Time Corp. v. Tennenbaum, 267 F.2d 327, 46 CCPA 895 (1959).

During the years I have participated in reviewing decisions of the Trademark Trial and Appeal Board I have, in the main, found them well reasoned, logical and consistent with the statutes and decisions of this court. I regret my inability to agree in this matter.

59 CCPA

---

1. See, e. g., Clinton Detergent Co. v. Proctor & Gamble Co., 302 F.2d 745, 49 CCPA 1146 (1962) ("CARJOY" for "combined cleansing and polishing materials" refused registration in view of the well-advertised, registered mark "JOY" for "sudsing cleaner, cleanser and detergent."); Jenkins Publishing Co. v. Metalworking Publishing Co., 315 F.2d 955, 50 CCPA 1218 (1963); Bellbrook Dairies, Inc. v. Hawthorn-Mellody Farms Dairy, Inc., 253 F.2d 431, 45 CCPA 842 (1958).

2. See Carlisle Chemical Works v. Hardman & Holden, 434 F.2d 1403, 58 CCPA 751 (1970); United Merchants and Manufacturers v. R. A. Products, 404 F.2d 399, 56 CCPA 751 (1968).