COCA–COLA BOTTLING COMPANY OF MEMPHIS, TENNESSEE, INC., Appellant,

v.

JOSEPH E. SEAGRAM & SONS, INC., Appellee.

Patent Appeal No. 75–594.

United States Court of Customs and Patent Appeals.

Dec. 11, 1975.

James H. Littlepage, Littlepage, Quaintance, Murphy & Dobyns, Washington, D. C., attorney of record, for appellant.

Edward J. Handler, III, Kenyon & Kenyon Reilly Carr & Chapin, New York City, attorney of record, for appellee; Ernest R. Brendel, New York City, of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board, 185 USPQ 186 (1975), on cross motions for summary judgment, sustaining appellee's opposition No. 55,829, filed June 10, 1974, against application serial No. 455,996, filed April 30, 1973, for registra-

tion of the mark below for nonalcoholic club soda, quinine water, and ginger ale.

Appellee is owner of the trademark BENGAL for gin, registration No. 811,-830, issued July 26, 1966. We affirm.

The issue is whether appellant's mark so resembles appellee's mark as to be likely, when applied to appellant's goods, to cause confusion or mistake, or to deceive within the meaning of 15 U.S.C. § 1052(d).

Appellant has admitted that the goods sold under its mark and those sold under appellee's mark are sold to the same class of purchasers, are used together, and are sold over the same counters. However, appellant's position is that the marks have primary meanings so different that neither suggests a connection with the other, citing *Lever Brothers Co. v. Barcolene Co.,* 463 F.2d 1107, 59 C.C. P.A. 1162 (1972). More specifically, appellant argues that BENGAL suggests origin in Bengal, which is defined as "a former province in NE India: now divided between India and Pakistan"; [1] while BENGAL LANCER suggests a member of an elite corps and the book of that title, first published in Great Britain in 1930 and subsequently published in the United States under the tile "The Lives of a Bengal Lancer." The sole evidence of the different meanings is an affidavit of appellant's attorney stating that the flyleaf on a copy of the book indicated that it had undergone its eleventh printing as of 1937 and that "I remember the popularity of this book during the 1930's and the popularity of the moving picture made therefrom."

Appellant also relies on the differences in the goods and the appearance and sound of the parties' marks, but appears to concede that these differences would be insufficient to avoid confusion were it not for the "well-known different meaning" of appellant's mark.

From the listings of the parties' goods and from appellant's admissions, we are persuaded that the goods are so closely related that use of substantially similar marks thereon would be likely to cause confusion. See *Schenley Industries, Inc. v. Fournier, Inc.,* 357 F.2d 395, 53 CCPA 1046 (1966); *Puerto Rico Distilling Co. v. Coca-Cola Co.,* 120 F.2d 370, 28 CCPA 1143 (1941). We are also persuaded that the marks, considered as a whole, are substantially similar. When one incorporates the entire arbitrary registered mark of another into a composite mark, inclusion in the composite mark of a significant nonsuggestive element does not necessarily preclude the marks from being so similar as to cause a likelihood of confusion. *In re West Point-Pepperell, Inc.,* 468 F.2d 200 (Cust. & Pat.App. 1972). Therefore, this case turns on whether the marks have a meaning or meanings to the purchasers of the parties' goods sufficiently different to avoid a likelihood of confusion.

Appellant compares the difference in meanings between its mark and that of appellee to that between "horse chestnut" and "horse." No person, appellant argues, would be likely to confuse a horse chestnut with a horse. The analogy fails. Although a horse chestnut has only the remotest relationship to a horse,[2] the relationship between BENGAL LANCER and BENGAL is close. Appellant's description of the book forming the basis of its separate-meaning argument shows that a significant portion deals with India. Moreover, the soldier in the design portion of the mark, with

---

1. *Random House College Dictionary* (1973). The portion that was East Pakistan is now Bangladesh.

2. Its name is derived from its use in treating respiratory diseases of horses. *Random House College Dictionary* (1973).

his turban and beard, is clearly an Indian Sikh. Appellee well points out that there was no suggestion in the *Lever Brothers Co.* case of any evocation of a common connection between ALL and ALL CLEAR. Even if we accept as established that the book was popular during the 1930s it does not follow that confusion among purchasers of the parties' goods would be unlikely today.

Accordingly, the decision of the board is *affirmed*.

*Affirmed.*